OLD COLONY STREET RAILWAY COMPANY *vs.* BROCKTON AND PLYMOUTH STREET RAILWAY COMPANY.

SAME *vs.* SAME.

Norfolk.   March 13, 16, 1914. — May 23, 1914.

Present: RUGG, C. J., LORING, SHELDON, & CROSBY, JJ.

*Contract,* Construction, Performance and breach. *Joint Tortfeasors. Reference and Referee.*

In a contract in writing relating to the operation of cars of one street railway company upon the tracks and by the servants of a second street railway company, in which it was provided that the second company should be liable ultimately for all damage caused by its negligence or that of its servants, provided that such damage was not caused by faulty construction or lack of repair of the cars of the first company, the second company further agreed to indemnify the first company for all damages suffered by it or for which it should be held responsible and for which the second company thus had made itself liable, and the first

company agreed to indemnify the second company for all damages for which it should be held responsible, where such "damage has been occasioned in a manner to render . . . [the first company] . . . liable as provided herein." By reason of the combined negligence of the first company in suffering an axle of one of its cars to be out of repair, and of the servants of the second company in running the car at an excessive rate of speed, several persons received injuries for which they made claims against the second company. The second company settled such claims. *Held,* that the second company had no right under the contract to compel the first company to pay to it any part of what it had so paid in settlement, because the agreement dealt only with damage which was due to the fault of one company without fault on the part of the other.

Where claims for damages for personal injuries are made upon one of two street railway companies whose joint negligence caused the injuries and such company settles the claims, it has no right of action in tort against the other company to compel it to pay any part of the money it paid in such settlements.

A contract in writing between two street railway companies relating to the running of cars of the first company upon the tracks and by the servants of the second company, after providing in substance that the first company should be liable ultimately for damages resulting from faulty construction or want of repair of its cars and that the second company should be liable ultimately for all damage resulting from negligence of its servants, further provided in substance that, if the companies were unable to agree as to which company was liable under the contract for any injury or damages, a claim for which had been settled and paid out of court, the controversy should be determined by an attorney at law to be agreed upon by the two companies, who should have power to apportion the liability between the two companies in such a way as he should deem just and equitable and whose determination should be conclusive upon both companies. The second company paid money in procuring settlements, upon terms which the first company approved, of certain claims made upon it for personal injuries and damages caused by the combined negligence of the first company in suffering one of its cars to be out of repair and of servants of the second company in running the car at an excessive speed, and thereafter the first company refused to proceed before an attorney at law chosen by the companies in accordance with the provisions of the contract, and the attorney at law did not make any apportionment of liability between the companies. *Held,* that the second company could not maintain an action at law upon the contract to compel the first company to pay any portion of the sums so paid by it before the matter was referred to the attorney and determined by him, because to permit the maintenance of such an action would be to make a new contract for the parties and to substitute the court for the referee selected and agreed upon by them.

TWO ACTIONS OF CONTRACT OR TORT, seeking, under the provisions described in the opinion of a contract between the plaintiff and the defendant relating to the running of the defendant's cars by the plaintiff's employees over the plaintiff's tracks from a certain point in Whitman by a designated route into Brockton, for reimbursement for certain sums paid by the plaintiff in settlement of

actions brought against it by reason of the derailment of a car of the defendant alleged to have been caused by an axle which, owing to negligence of the defendant, was allowed to be used in a defective condition. Writs dated November 11, 1910, and June 27, 1911.

The cases were referred to R. D. Weston, Esquire, as auditor, and afterwards were heard together, without a jury, by *McLaughlin*, J.

The judge made findings of fact which in substance were as follows:

A car belonging to the defendant, while being operated on the plaintiff's track by the plaintiff's servants under the agreement described in the opinion, left the rails on the straight rail, at a point a little beyond the curve at Salisbury Square in Brockton and came violently into collision with the curbstone of a sidewalk, and some of the passengers sustained serious injuries. A considerable number of actions at law were brought against the plaintiff by such passengers, and the plaintiff sought in these actions to recover the amounts it paid in satisfaction of their claims and the expense of the actions.

Acting under the provision of the contract, described in the opinion, relating to the hearing and determining, by an attorney to be selected by the parties, of the question, which of the parties should be liable finally for damages resulting from accidents described in the contract, the parties agreed upon James D. Colt, Esquire, as a disinterested attorney at law, to act as arbitrator in the case of an action brought by one Mary A. Cavanaugh, an injured passenger, against the present plaintiff arising out of this accident. Mr. Colt attended the trial of that case. The trial resulted in a verdict for the plaintiff in that action, (which subsequently was set aside by the presiding judge and a new trial ordered,) and that action and several claims arising out of the same accident then were compromised by agreement of the parties without any further trials upon terms of which the defendant in the present actions approved. The amount of payments made and expenses incurred in connection with such settlements was $38,378.39.

The plaintiff was ready and offered to proceed before Mr. Colt as arbitrator, but the defendant refused to do so; and thereupon the plaintiff brought the first action. The second action is to re-

cover additional payments made later.  It was not contended by the defendant that the provisions in the contract relating to the submission of disputed matters to an arbitrator is a defense to these actions; and the plaintiff contended that the judge should determine the liability with the same powers that an arbitrator would have had, if the matters in dispute had been submitted to him.

The findings of the judge continued as follows: "The derailment and subsequent collision with the curbstone were the result of two equally co-operating and contributing causes. One was the fact that at the time of the derailment the car was being operated at a negligently excessive rate of speed; the other was the breaking of an axle, which occurred immediately before or simultaneously with the derailment, an old crack therein culminating in a complete fracture.  The derailment would not have occurred if the car had been run with a proper degree of care, nor would it have occurred if the axle had been in proper condition. Having in mind the high degree of care which under the circumstances the defendant company was bound to exercise, I find that the defect in the axle arose from, or had not been discovered or remedied, in consequence of the negligence of the defendant company.

"I find for the defendant.  If upon the facts as I have found them and under the terms of the agreement I have the right to find the defendant liable and to apportion the damages, then I apportion them equally, and find for the plaintiff in the sum of $11,008.15 in the first case, with interest from November 11, 1910, and in the sum of. $8,181.14 in the second case, with interest from June 27, 1911, these dates being the date of the writ in each case respectively.  I make this apportionment upon the basis that the two causes named contributed equally to the result, and that each company was equally to blame."

The judge reported the cases to this court for determination.

*W. D. Turner*, (*G. Hoague* with him,) for the plaintiff.

*T. Hunt*, for the defendant.

SHELDON, J.  The agreement between these parties substantially provided in the first place that when cars of the defendant were operated upon the plaintiff's tracks in charge of the plaintiff's servants, the plaintiff should be ultimately liable for all damage

caused by its negligence or that of its servants, provided that it was not due to faulty construction or lack of repair of the defendant's cars or the mechanism, machinery or appliances thereof; and the plaintiff agreed, upon certain conditions, to indemnify the defendant for all damages suffered by the latter or for which the defendant should be held responsible for which the plaintiff thus had made itself liable.   The defendant on its part agreed, upon conditions not now material, to indemnify the plaintiff for all damages for which the plaintiff should be held responsible, "where such injury or damage has been occasioned in a manner to render . . . [the defendant] liable as provided herein."

The accident in question was due to two causes acting together: the excessive speed of the car due to the negligence of the plaintiff's servants; and the defective condition of the axle of the defendant's car, which condition was due to the negligence of the defendant. That is, the accident was due to the combined effect of the negligence of both parties, and cannot be attributed to the negligence of either one of them alone.

Under these circumstances, we think it plain that upon that part of the agreement which we have stated the action cannot be maintained.   The case is not covered by that clause of the agreement, giving to it its broadest construction against the defendant; for at most it dealt only with accidents which were due to the fault of one party rather than of the other.   Nor can there be a recovery in tort; for where, as here, both of the parties are at fault, the loss must rest where it has fallen.   *Churchill* v. *Holt,* 131 Mass. 67, 69.   The plaintiff has contended indeed that the. excessive speed of the car was not the proximate cause of the accident, but merely a condition which contributed to it, and but for whose existence it perhaps would not have happened.   *Snow* v. *New York, New Haven, & Hartford Railroad,* 185 Mass 321. *Gibson* v. *International Trust Co.* 186 Mass. 454. *Bellino* v. *Columbus Construction Co.* 188 Mass. 430, 433. *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536.   But the judge found, with manifest reason, that the excessive speed was one of the proximate causes of the accident; that the accident was directly due to the negligence of both parties as its proximate causes.   That finding we cannot revise.

But the agreement contained further provisions.   There was a stipulation that at the trial of an action brought against either of

the parties, in which the defendant therein claimed that the other might be liable, some attorney to be selected by their counsel should attend and follow the testimony, and in case of a verdict for the plaintiff therein hear such additional evidence as might be offered by either company and decide which one of these parties should be finally liable.   The agreement then contained these further clauses: "If such attorney should be of opinion, in any case submitted to him hereunder, that the accident in respect of which the suit is brought and tried was the joint result of negligence on the part of the Old Colony Company [the plaintiff], its agents or employees, and of the defective condition of the Plymouth Company's [the defendant's] car, he shall have power to apportion the liability between the two companies in such manner as he shall deem just and equitable, and they hereby agree to pay such proportions of any judgment recovered by the plaintiff in such case as he shall award against them respectively.   If the parties, by their respective counsel, shall be unable to agree as to which company is liable, under the provisions of this contract, for any injury or damages occurring, suit or claim for which shall be settled and paid without trial or out of court, both companies hereby agree to let the question be determined by a third person, some attorney at law agreed upon by their respective counsel for the purpose; and they will abide by his determination as conclusive."

The suits and claims against the plaintiff growing out of this accident were settled, not by trials, but by adjustments made between this plaintiff and the respective parties who made those claims.   The first action was indeed tried in court, and Mr. Colt was selected by the parties and attended the trial.   A verdict therein was rendered against this plaintiff, but the judge set it aside and ordered a new trial.   Thereupon this plaintiff made a settlement of all the suits and claims pending against it by reason of this accident, but upon terms approved by this defendant. This defendant then refused to proceed before Mr. Colt as an arbitrator under the stipulations above quoted, and the plaintiff brought this action.

The agreement between these parties as to the adjustment between themselves of actions brought against either party by reason of accidents which were the joint result of the negligence of both of them is that the arbitrator appointed to attend the trial of such

suits and determine which one of the parties was ultimately responsible may, if he finds that both were at fault, apportion the damages between them in such manner as he shall deem just and equitable.   If we assume in favor of the plaintiff that this stipulation applies to cases like the present, in which no trial or a merely fruitless trial was had, yet the fact remains that there is here no agreement that in cases where both parties are at fault the damages shall be apportioned justly and equitably between them.   The agreement is merely that the arbitrator shall have power to apportion them according to his view of what is just and equitable; and the court has no means of determining whether he would exercise that power or what his individual view might be. *Munson* v. *Straits of Dover Steamship Co.* 102 Fed. Rep. 926.   The judgment of a judge or jury cannot be substituted for that of the arbitrator.   This is an action at law.   The rule at law is well settled that in such a case as this there could be no contribution, no apportionment, between these parties.   A court of law cannot say that this rule, established and constantly adhered to, can be departed from or altered or varied, except so far as the parties have agreed that it shall be. These parties well may have been willing to leave the question to the determination of a lawyer selected by themselves, presumably not only for his knowledge of the law, but for his practical familiarity with street railways whereon cars are propelled by electricity and with all the machinery and appliances used for that purpose. But this does not imply a consent that the same question, with all the sound judgment and all the technical knowledge that it may demand, should be left to the determination of an ordinary jury or of a judge, who, however great his knowledge of the law might be, would be scarcely likely to combine with that knowledge the trained skill of experienced electricians and railway men.   There is no agreement like those which were considered in such cases as *Humaston* v. *Telegraph Co.* 20 Wall. 20, or *Dinham* v. *Bradford,* L. R. 5 Ch. 519.   The defendant has not received property from the plaintiff, which according to the ordinary rules of law should be paid for by the defendant, and we have not a merely subsidiary agreement for fixing a price by arbitration, so that justice can be done by ascertaining the value of what the defendant has obtained at the expense of the plaintiff.   Here the parties have agreed that upon certain conditions the ordinary rule of law shall not govern the adjustment

of their affairs; and we cannot say that their agreement shall be extended beyond the scope of those conditions. The reasoning of the court in *Deerfield* v. *Arms,* 20 Pick. 480, though upon different facts, is applicable here. No more than in that case can we give to the agreement of the parties an effect for which they did not choose to stipulate. It is true, as the plaintiff has contended, that all agreements, if possible, are to be construed so as to give them effect, and so as to be in harmony with law and justice. *Noonan* v. *Bradley,* 9 Wall. 394. *Merriam* v. *United States,* 107 U. S. 437. *In re Dunkerson & Co.* 4 Biss. 227. *Watts* v. *J. B. Camors & Co.* 10 Fed. Rep. 145. *McElroy* v. *Swope,* 47 Fed. Rep. 380. *Collis* v. *Emett,* 1 H. Bl. 313. *Russell* v. *Phillips,* L. R. 14 Q. B. 891, 901. But that principle does not authorize us to make a new contract, or to bind parties to terms beyond the fair meaning of the language which they have used. Jessel, M. R., in *Smith* v. *Lucas,* 18 Ch. D. 531, 542.

The result is that the plaintiff cannot maintain its actions. We do not need to discuss the specific rulings made by the judge at the trial. We find no error in any of them. Judgment must be entered for the defendant on the finding in its favor.

*So ordered.*